IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 15-1230-JWB

$144,780.00 IN UNITED STATES
CURRENCY, *more or less*,

Defendant.

**MEMORANDUM AND ORDER**

This matter comes before the Court on a motion for summary judgment filed by claimant Nathan Duckworth ("Duckworth"). (Doc. 50.) The motion has been fully briefed and is ripe for decision. (Docs. 53, 59, 64.) The motion is DENIED for the reasons set forth herein.

The United States brought this action seeking forfeiture of $144,780 in currency pursuant to 21 U.S.C. § 881(a)(6). It alleges the money was intended to be used to purchase controlled substances or represented proceeds from the sale of controlled substances. Duckworth claims to be the lawful and rightful owner of the money. (Doc. 5). Duckworth argues the Government is unable to cite evidence that the source or destination of the money was related to controlled substance offenses.

**I. Uncontroverted Facts**

Nathan Duckworth lives in Kansas City, Missouri, with his wife Jennifer and their young daughter. Duckworth has a concert promotion business in Kansas City under the name "Building Bridges Entertainment, LLC," a Missouri organization in good standing. The business was organized in Missouri in January of 2015.

Duckworth was westbound on I-70 on May 12, 2015, when he was stopped for speeding in Ellis County, Kansas, by Kansas Highway Patrol Trooper James McCord. Duckworth was driving a rented 2015 Chevy Tahoe. (Doc. 59-2). Walter Weathers, Jr., was a passenger in the car. There was no luggage in the car and the rental vehicle was due back in Kansas City that same day. Duckworth told McCord he was going to Colorado for a family vacation. (*Id*.). Weathers similarly told another officer that they were going to visit Duckworth's family. Weathers told McCord he did not have any identification on him, although it was later shown that he did have his identification.

McCord informed the men that he smelled burnt marijuana in the car. Duckworth and Weathers both denied that any marijuana had been smoked in the vehicle, and Duckworth asked that a drug dog be brought to the scene. McCord subsequently searched the vehicle. He found marijuana "gleanings" on the floor of the car. (Doc. 52 at 20). McCord also searched a backpack and found a large amount of cash ($144,780) in vacuum-sealed plastic wrapping inside a zippered container. The lawfulness of the stop, search, and seizure were previously litigated in this case on Duckworth's motion to suppress, with the Government prevailing. (Doc. 36).

McCord testified that in his experience, wrapping large amounts of currency in vacuum-sealed packages is common in the drug trafficking industry, and that the packages he seized from Duckworth's car were consistent with drug trafficking proceeds he has seen in other cases. (Doc. 59-2). After the money was seized, a certified narcotics-sniffing dog was deployed and indicated to the odor of controlled substances coming from the $144,780. (Doc. 59-3).

On October 12, 2014, about seven months prior to the above-incident, Duckworth and his spouse were traveling on I-70 in Ellsworth County, Kansas, in a rented vehicle, when they were stopped for speeding by Kansas Highway Patrol Trooper R.M. Wolting. During that stop, Wolting

found nine pounds of marijuana in vacuum-sealed bags, a loaded Sig Sauer .45 caliber pistol, and $5,320 in U.S. currency in the vehicle. (Doc. 59-4). The Government cites evidence that Duckworth told the trooper at the time of the stop that the marijuana was his. (*Id.*).

Duckworth cites evidence of receipts and contracts, allegedly from his music promotion business, indicating that his business sponsored various events, particularly at Encore Nightclub in Kansas City in 2014 and 2015. (Doc. 53-3). The documents indicate Duckworth collected door entry fees from customers for sponsored concerts or parties, and that he was entitled to keep such receipts less expenses for various items. Receipts in the name of the Encore Nightclub indicate on their face that Duckworth may have collected door receipts of approximately $167,000 during the six-month period prior to May 12, 2015.

Duckworth cites evidence that on May 12, 2015, he was taking the cash in his vehicle to Denver to invest it in a proposed 12-city tour of musical artists. (Doc. 53-8 at 65). Duckworth testified he had communicated on social media with an individual named Ruben Romero in Denver, who operated a business called EnV Entertainment, and that they had a plan to organize and promote such a tour. Romero, for his part, testified that the two men communicated on social media about putting together a tour of musicians, and that what Duckworth was interested in would have cost $140,000 to $160,000 "to get it started." (Doc. 53-4 at 3). Duckworth states in an affidavit that in his experience, "it is common in the music industry, particularly among African American artists, to deal in cash" and that when large amounts of cash are involved, "they are often shrink wrapped in plastic." (Doc. 64-1).

The Government cites evidence that Romero, who previously spent time in state prison for a felony marijuana offense, had never produced a concert before. He had no idea of what cities the proposed tour would have gone to. The parties had no written agreement. Romero is a musician

and his business entity was created to sell his own compact discs, although it hardly sold any. He and Duckworth never met in person. Nearly a year after Duckworth was stopped and the money was seized, Duckworth emailed Romero and asked him to provide "what a contract would have looked like" for the proposed tour. Romero drafted such a document. It cites the sum of $140,000 to be paid by Building Bridges (i.e., Duckworth) as the promoter of the tour, which Romero said was "just a rough ballpark estimate of what it would have originally [cost]."

Duckworth testified that $40,000 of the seized cash was a loan from Mustafa Ali, who operated a car rental business in Kansas City. (Doc. 59-1 at 21). Mr. Ali testified he loaned Duckworth $40,000 in May of 2015, with the understanding that Duckworth would pay it back together with 50% interest ($20,000) within two months. Ali testified he gave Duckworth the money out of $43,000 in cash that Ali had at his house. Ali testified he understood he was investing in a musical tour of some sort, although he did not ask about details.

Duckworth cites deposition testimony of his accountant, Connie Neighbors, who said Duckworth "could have had" $100,000 available to him from his promotion business and from his wife's hair salon. The Government cites evidence that Neighbors' analysis of Duckworth's finances was essentially based on receipts provided by Duckworth, as to which she had no personal knowledge.

Neighbors was also the accountant for Mustafa Ali. Sometime after the cash was seized from Duckworth, Ali referred Duckworth to Neighbors. In 2011, Duckworth had filed Chapter 7 bankruptcy. (Doc. 59-1 at 50). In 2012, he reported income of $12,643 on his federal income tax return. (*Id.* at 99). In 2013, he reported income of $17,809. (*Id.* at 113). Prior to the cash seizure on May 12, 2015, Duckworth had reported income of $17,059 on his 2014 federal return. Duckworth hired Neighbors sometime prior to October of 2015. In January of 2016, Duckworth

filed an amended 2014 return, with Neighbors' help, revising his reported income to $95,935. (*Id.* at 126).

**II. Summary Judgment Standards**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and an issue of fact is "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol–Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004). But the court can disregard statements that are conclusory or made without personal knowledge of the matter. *See Counce v. Wolting*, No. 13-3199-JTM-KGS, 2018 WL 1138281, at *3 (D. Kan. Mar. 2, 2018) (citing cases).

**III. Discussion**

Pursuant to 21 U.S.C. § 881(a)(6), money is subject to civil forfeiture by the Government when it is "(1) furnished or intended to be furnished in exchange for a controlled substance, (2) traceable to a controlled substance exchange, or (3) used or intended to be used to facilitate a violation of the Controlled Substances Act. ..." *See United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1270 (10th Cir. 2008). The Government has the burden to show, by a

preponderance of the evidence, a substantial connection between the currency and drug trafficking. *United States v. $252,300 in U.S. Currency*, 484 F.3d 1271, 1273 (10th Cir. 2007). But the Government is not required to connect the currency to a particular drug transaction. *United States v. $64,895 in U.S. Currency*, No. 10-1434-RDR, 2013 WL 2406095, *1 (D. Kan., May 31, 2013) (citing *United States v. $21,055 in U.S. Currency*, 778 F.Supp.2d 1099, 1103 (D. Kan. 2011)). Duckworth contends that "[n]owhere in the record does any evidence appear of any connection between the … $144,780.00 and any illegal activity." (Doc. 53 at 8). "To the contrary," he argues, "the record is replete with the sources of the defendant currency, all legitimate." (*Id*.). But those arguments fail to take account of the standards governing summary judgment. Because it is the function of a jury or other fact-finder[1] at trial to make credibility determinations and to weigh conflicting evidence, at the summary judgment stage the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. Applying that standard, a reasonable factfinder could view the Government's evidence as more credible than Duckworth's and could find it is sufficient to show that the $144,780 in cash represented the proceeds of controlled substances or was intended to be furnished in exchange for controlled substances.

For example, the Government has cited evidence that vacuum-sealing currency is a common practice in drug trafficking. Numerous cases recognize the same point. *See United States v. $252,300 in U.S. Currency*, 484 F.3d 1271, 1275 (10th Cir. 2007) ("[w]rapping cash in cellophane-type material is a technique known to be used by drug dealers to prevent discovery by drug-sniffing dogs") (citation omitted); *United States v. Edwards*, 834 F.3d 180, 199 (8th Cir. 2016) (packaging money in vacuum-sealed bags is a known technique used by drug dealers). The

[1] This matter is set for a trial to the court on July 10, 2018. (Doc. 49 at 5; Doc. 65).

same is true with respect to transporting large amounts of cash, which is "strong evidence" of a connection to a drug transaction, even if it is not sufficient in and of itself. *$252,300*, 484 F.3d at 1275. Under summary judgment standards, it is not dispositive that Duckworth provides a conflicting, possibly innocent explanation for these actions, because a reasonable factfinder could view the Government's evidence as more probable and therefore more persuasive. This is particularly true when other evidence is considered, such as evidence that Duckworth lied to the Trooper about the purpose of his trip, and that seven months prior to this incident, Duckworth was discovered traveling in a rental car on I-70, heading east, with nine pounds of marijuana and a gun. A reasonable factfinder could conclude such evidence indicates Duckworth's purpose for possessing a large amount of cash on May 15, 2015, was, like his previous trip, likely related to drug trafficking.

The Government has also cited evidence raising genuine issues of fact about Duckworth's explanations for the source and purpose of the $144,780. Duckworth cites little more than some receipts of uncertain validity and his own testimony to show that the cash came from legitimate business sources. Duckworth's amendment of his 2014 income tax return after the $144,780 was seized, however, could cause a factfinder to doubt his credibility as a legitimate business operator. Similarly, Duckworth's explanation that the cash was intended to promote a musical tour could be viewed as dubious when, among other things, he had never personally met Romero (the supposed recipient of the money); Romero had no experience in putting on a concert tour and could not recite the details of it; there was no written agreement between Duckworth and Romero; and Romero had a prior felony conviction involving marijuana. In sum, a factfinder drawing all reasonable inferences in the Government's favor could conclude that Duckworth's explanations

lack credibility, and that the Government's proffered explanation of a connection to drug trafficking is more probable.

**IT IS THEREFORE ORDERED** this 3rd day of May, 2018, that Claimant Nathan Duckworth's Motion for Summary Judgment (Doc. 50) is DENIED.

s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE